UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                              Case No.   8:04-cr-521-T-23MAP
                                                                                8:07-cv-1920-T-23MAP

WILBUR H. MARTINEZ
_____/

**O R D E R**

       Martinez's motion to vacate sentence pursuant to 28 U.S.C. § 2255 (Doc. 1) challenges the validity of his convictions for both conspiring to possess and possessing with the intent to distribute five kilograms or more of cocaine while on board a vessel. Following a jury's finding of guilt, Martinez was sentenced to 188 months. The circuit court affirmed (Doc. 221) both the conviction and the sentence.

       Rule 4, Rules Governing Section 2255 Cases, requires a preliminary review of the motion to vacate. Section 2255 requires denial of the motion without a response if the "motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." Accord Wright v. United States, 624 F.2d 557, 558 (5th Cir. 1980)[1] (summary dismissal of a Section 2255 motion was proper "[b]ecause in this case the record, uncontradicted by [defendant], shows that he is not entitled to relief."); Hart v. United States, 565 F.2d 360, 361 (5th Cir. 1978) ("Rule 4(b) of § 2255 allows the district court to summarily dismiss the motion and notify the movant if 'it plainly appears

---

[1] Unless later superseded by Eleventh Circuit precedent, a Fifth Circuit decision issued before October 1, 1981, binds this court. Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief.'"). Martinez's motion to vacate sentence is without merit.

The following summary of facts is copied from the decision on appeal (Doc. 42):

> The United States Coast Guard apprehended Wilbur Henry Martinez and four other men aboard a "go-fast" vessel traveling in international waters off the coast of Colombia. The Coast Guard recovered approximately 1682 kilograms of cocaine that Martinez and the other men had thrown overboard prior to being apprehended.

<u>Ground One</u>

Martinez challenges both the Maritime Drug Law Enforcement Act's ("MDLEA") extension of jurisdiction to include his craft, which was in international waters off the coast of Colombia, and the MDLEA's removal of jurisdiction from the jury's consideration. Both of these issues were rejected in Martinez's direct appeal (Doc. 221). An issue rejected on direct appeal is not subject to further review in a Section 2255 motion. <u>United States v. Nyhuis</u>, 211 F.3d 1340, 1343 (11th Cir. 2000) ("The district court is not required to reconsider claims of error that were raised and disposed of on direct appeal. '[O]nce a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255.' "), <u>cert. denied</u>, 531 U.S. 1131 (2001) (citation omitted).

<u>Ground Two</u>

Martinez presents three claims of ineffective assistance of trial counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." <u>Waters v.</u>

Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994)).  Strickland v. Washington, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented.  In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims.  According to Strickland, first, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Strickland, 466 U.S. at 687, 104 S.Ct. 2052.

Sims v. Singletary, 155 F.3d 1297, 1305 (11th Cir. 1998).

Strickland requires proof of both deficient performance and consequent prejudice.  Strickland v. Washington, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); Sims v. Singletary, 155 F.3d at 1305 ("When applying Strickland, we are free to dispose of ineffectiveness claims on either of its two grounds.").  "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  Strickland v. Washington, 466 U.S. at 690.  "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  Strickland v. Washington, 466 U.S. at 690.  Strickland requires that "in light of all the

circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland v. Washington, 466 U.S. at 690.

Because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment," Martinez must demonstrate that error by counsel prejudiced the defense. Strickland v. Washington, 466 U.S. at 691-92. To meet this burden, Martinez must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland v. Washington, 466 U.S. at 694.

First, Martinez faults trial counsel for failing to provide an interpreter. At the commencement of trial, Martinez rejected needing an interpreter.

The Court: And you are Wilbur Henry Martinez?

The Defendant: Yes, sir.

The Court: All right. And you speak English?

The Defendant: Yes, sir. That's my language.

The Court: That is your language?

The Defendant: Yes, sir.

The Court: I see. Are you from an English-speaking country?

The Defendant: Yes, sir. From Nicaragua, the Coast Atlantic.

. . .

[Defense Counsel]: Your Honor, Mr. Martinez, despite his last name, is
not a Spanish speaker, as he has indicated to the Court. He indicated that

- 4 -

> English is his language. Actually, it is kind of a version of English. He has been raised on San Andres Island. And it is really a combination of patois, Creole, and English.
>
> The Defendant: Creole—my language is Creole-English, a dialect different from you all English. But I understand you all — everything more. Sometimes I don't understand good, but you speak slowly to me, I understand. Just like myself, if I speak slow as to you all, you all understand me good. I try my best. But my English is Creole-English, broken English.
>
> The Court: Well, the issue here is whether you can understand what is going on in the courtroom or whether you need an interpreter to assist you in understanding either the proceedings here in the courtroom or your counsel. . . .   Are you able to understand your counsel, in your discussions with her, without an interpreter?
>
> The Defendant: I believe that I don't need an interpreter to speak Spanish to me, because Spanish is not my language.
>
> The Court: You don't speak Spanish?
>
> The Defendant: No, sir. That is not my language. My language is English-Creole.
>
> The Court: Let me ask you this. I know it is not your preferred language. I take it you do not speak Spanish?
>
> The Defendant: I don't speak Spanish, because it is not my language. I speak English.

Transcript of Trial Proceedings at 3, 5-7 (Doc. 207). Martinez's first claim in ground two, that trial counsel was ineffective for failing to provide an interpreter, is without merit.[2]

---

[2] Martinez's understanding of English was again discussed at sentencing:

[Defense Counsel]: You Honor, I can't certainly contradict what my client is saying about understanding difficulties he has had. We did attempt to find a translator at one point; we were unable to do so. I personally have never had a problem, a significant problem, communicating with him. Certainly there are words and phrases that we have to ask each to clarify or repeat. As the court has seen today, I think we have been sufficient when we make an effort when he lets us know he does not understand in communicating.

The Court: My, I guess, operative assumption throughout these proceedings, and I still

- 5 -

Martinez's second claim in ground two is that trial counsel's failure to present co-defendants as defense witnesses denied Martinez his right to compulsory process. Martinez's claim fails for three reasons:  (1) Martinez fails to identify the co-defendants he wanted to testify, (2) a defendant cannot require a co-defendant to testify, and (3) Martinez was not precluded from presenting the co-defendants' testimony, his counsel chose not to present the co-defendants' testimony.

Trial counsel must decide which strategical and tactical option to pursue, such as deciding which witness or defense to present. See e.g., Dingle v. Sec'y, Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007) ("Even if counsel's decision [to not call a certain witness] appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'"), quoting Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983), and Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) ("Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess.") (en banc).  The term "strategy" is broadly defined.  "By 'strategy,' we mean no more than this concept:  trial counsel's

---

> think is valid, and no observation either through the trial or today changes that observation, is that Mr. Martinez is a native speaker of English, albeit with a strong Creole accent.  His problem is not so much understanding what he hears in spoken English by me, you, the prosecutor, or the witnesses, with the occasional exception of an uncommon term.  But his problem is making himself understood because he — his English is obscured somewhat behind a thick accent, and a tendency to turn his head and look in the other direction at crucial moments during his speech.
>
> I remain satisfied that the defendant has understood these proceedings both during his trial and pretrial, and as well this morning, although he is hampered somewhat in easily expressing himself.

Transcript of Sentencing Hearing at 24-25 (Doc. 193).

course of conduct, that was neither directly prohibited by law nor directly required by law, for obtaining a favorable result for his client." Chandler v. United States, 218 F.3d at 1314 n.14.  See also Felker v. Thomas, 52 F.3d 907, 912 (11th Cir. 1995) ("Within that wide range of reasonable professional assistance [that is constitutionally acceptable], there is room for different strategies, no one of which is 'correct' to the exclusion of all others.") and Stanley v. Zant, 697 F.2d 955, 964 (11th Cir. 1983) (choosing a specific line of defense to the exclusion of others is a matter of strategy).

Martinez's third claim in ground two is that counsel was ineffective for not allowing Martinez testify during trial.  This court ensured during trial that Martinez understood that testifying was his choice.

> The Court:  [The prosecutor] has just told me that the United States is about to rest; that is, to conclude or end their presentation, their case.
>
> The Defendant:  Yes, sir.
>
> The Court:  You understand?
>
> The Defendant:  Yes, sir.
>
> The Court:  All right.  At — so it is time for me to recognize [defense counsel] to present evidence for you.  Understand?
>
> The Defendant:  Yes, sir.
>
> The Court:  Now, sometimes the defendant will take the stand and testify, sometimes not.  My point is to remind you that under the law of the United States that you have a right not to testify, if you choose.  And if you do not testify, I will tell the jury, as you have heard me talk to them earlier, I will tell them that they are not to hold against you the fact that you did not testify.  Do you understand what I just said?
>
> The Defendant:  The last part I didn't understand.
>
> The Court:  All right. Let's go again.  There are two things —

The Defendant:  Yes, sir.

The Court:  — that you could do now.

The Defendant:  I understand that part.

The Court:  Testify or not testify.

The Defendant:  Thank you.

The Court:  If you elect — if you choose not to testify, that's your right.

The Defendant:  Yes, sir.

The Court:  And the jury must respect that right.  So if you elect not to testify, I will instruct the jury that they cannot hold that against you.

The Defendant:  Yes, sir.

The Court:  So — nor can the prosecutor mention that or say anything about the fact that you did not testify.  Do you understand that much?  Are you with me so far?

The Defendant:  Yes, sir.

The Court:  Okay.  You also have a right, if you choose, to take the stand and testify and tell the jury your side of the story.  Do you understand that?

The Defendant:  Yes, sir.

The Court:  That decision, that choice — you understand the word "choice"?

The Defendant:  Yes, sir.

The Court:  Okay.  That choice is yours, and yours only.  It is not mine; it is not [the prosecutor's]; it is not [defense counsel's].  It is yours.  You must decide whether to get on the witness stand or not.  Do you understand that?

The Defendant:  Yes, sir.

The Court:  Okay.  You are entitled to the advice of counsel . . . of course —

The Defendant:  Thank you.

The Court:  But ultimately it is your decision.

The Defendant:  Thank you.

The Court:  And I will enforce your decision.  I want you to understand, though, that if you take the stand to testify, first [defense counsel] will ask you questions and you can answer her questions, presumable not hostile, but friendly questions from her that give you an opportunity to tell your story the way you want to tell it and in the manner that you want it presented.  Do you understand that?

The Defendant:  Yes, sir.

The Court:  Because [defense counsel] is on your side.

The Defendant:  Yes, sir.

The Court:  Okay.  But when she is finished, if you get on the stand, [the prosecutor] gets to ask questions in cross-examination.

The Defendant:  Yes, sir.

The Court:  And these questions — [the prosecutor] is not on your side. And I see you smiling.  And you understand that, I know.

The Defendant:  Yes, sir.

The Court:  But her questions will be unfriendly — not necessarily an unfriendly manner, but to tell the side of the story that the prosecution or the United States is trying to tell.

The Defendant:  Yes, sir.

The Court:  And you understand that?

The Defendant:  Yes, sir.

The Court:  So you will need to decide whether you want to remain silent or whether you want to take the stand.  And when we come back, you are going to need to probably very soon make that decision.  Have you discussed with your lawyers whether you will testify?  Have you discussed with your lawyers whether you will get on the stand?

> The Defendant: If they talked to me about it?
>
> The Court: Yes.
>
> The Defendant: They told me about it. But I really not determine yet —
>
> The Court: You don't think you have finally decided?
>
> The Defendant: Yes, sir.
>
> The Court: You have not now finally decided?
>
> The Defendant: And I couldn't get to speak the right with them before now.
>
> The Court: Okay. I understand that you haven't finally decided. And it is not my intent to force you to decide before you have to. And your counsel controls really when that is.
>
> . . .
>
> I will tell you, I'm sure [defense counsel] has, that it is an important decision whether the defendant takes the stand. And I would advise you to take full advantage of the counsel, the lawyers who are on your side, as they talk to you about whether you should do that.
>
> The Defendant: Yes, sir. I thank you for that.

Transcript of Trial Proceedings at 178-83 (Doc. 209). Martinez cannot now complain about having followed defense counsel's advice whether to testify. Martinez's representation that defense counsel would not allow him to testify is refuted by the record.

Ground Three

Martinez alleges that both his constitutional protection against double jeopardy and his right to the effective assistance of counsel were violated by counsel's failure to challenge the indictment's charging both conspiring to possess and possessing cocaine. Martinez argues that the conspiracy occurred in Columbia (outside the United States'

- 10 -

jurisdiction) and not in international waters (within the United States' jurisdiction). Although the conspirators may have originally planned their conspiracy while in Columbia, transportation of the cocaine was a continuation of the conspiracy because the conspiracy was not just to plan the objective, but to accomplish it.  Additionally, conspiring to possess and possessing illicit drugs are two separate offenses not barred by double jeopardy.  <u>United States v. Vidal-Hungria</u>, 794 F.2d 1503 (11th Cir. 1986).

Accordingly, the motion to vacate sentence pursuant to 28 U.S.C. § 2255 (Doc. 1) is **DENIED**.  The clerk shall enter a judgment against Martinez and close this action.

ORDERED in Tampa, Florida, on November 30, 2007.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE